## · The People v. William Knapp.

*Indictment for murder: Verdict of manslaughter: Acquittal.* A verdict of manslaughter upon an indictment for murder, is an acquittal of the higher crime, and renders all further inquiry in regard to it incompetent.

*Immaterial points not considered.* A ruling upon a question which becomes unimportant by reason of an acquittal of the only crime to which it related, will not be reviewed on error.

*Homicide: Conspiracy.* Where parties combine to commit an offense, and a homicide is committed by a part of them in an attempt to escape, one who did not consent, and was not privy in fact, to the homicide, cannot be held responsible by reason of the original combination.

*Conspiracy.* There can be no responsibility against one who is not himself engaged in the act of his associates, unless it is within the scope of the combination to which he was a party, and thus authorized as his joint act.

*Evidence.* It is admissible, in case of an offense which was the termination of a continuous transaction, to show the entire train of connected facts.

*Evidence: Dying declarations.* It is also proper to admit proof of all the facts and circumstances attendant upon the making of dying declarations, to show more fully what credit should be given to them; and such dying declarations may properly be received to explain all the circumstances of the crime which led to the death of the declarant; they may cover such facts in relation thereto as the dying person could have testified to as a witness.—*Hurd v. People,* *25 Mich.,* *405,* approved.

Suspicious circumstances and practices connected with the taking of dying declarations will not exclude them, but go to their credibility.

A prisoner has the same right as the prosecution to rely upon the dying declarations of the person he is charged with killing.

*Practice in criminal cases.* Where, in a criminal case, there has been no judgment, a writ of error is unnecessary to bring the rulings to this court for review; the case should come up on the exceptions, under the statute.

*Submitted on briefs October 11. Decided November 7.*

Error to Livingston Circuit.

*Dwight May, Attorney General,* for the People.

*O. Hawkins,* for the respondent.

CAMPBELL, J.

Knapp was tried separately on an information charging him and others with the murder of Cloetha Perkins, and was convicted of manslaughter. The death of the deceased was caused by a broken leg, the result of accident, or else of her being thrown, or pushed, from a window by some one or more persons. The verdict of the jury can only rest upon the finding that she was thrown, or in some way ejected, from the window, and that defendant was responsible. But, as there was no testimony which could justify the conclusion that the defendant himself did this act, he must have been convicted on the ground that he was responsible for the conduct of those who did. And the principal questions in the cause bear upon this theory as allowed to go to the jury.

The evidence for the prosecution tended to show that the deceased was, before the accident, in the upper story of a building belonging to defendant, and used as a paint shop, in Howell, in company with him and several other young men, and that they had sexual intercourse with her; and this was claimed by the prosecution to have been forcible, and against her will, and that she had been forcibly taken there for that purpose, and that the whole transaction was essentially one combined grievance. On the part of the

26 MICH.—15.

defense, it was claimed that her death was not the result of any common purpose or offense, and was either accidental, or caused by some act in which Knapp had no part.

The verdict of the jury amounts in law to an acquittal of any more serious charge than manslaughter, and therefore is a denial of the charge that her death was the result of any other felony. This disposes of some otherwise serious questions, and reduces the number of exceptions which would have required attention had there been a verdict of murder.

A plea in abatement was interposed to the second count of the information,—which differs from the rest only in charging the homicide to have been done in connection with rape,—which, if found at all, would have made it murder. The ground of the plea was, that there had been no examination on that charge. The court overruled this plea. But, as the jury did not find Knapp guilty of this offense, nor of any act not charged in the other counts, to which no objection was interposed, the ruling became immaterial, and need not be discussed.

The defendant having been convicted of an offense which, under the verdict, could only be attributed to his complicity with others who actually did the act which led to the death of Miss Perkins it becomes necessary to consider on what basis any such verdict rests, in order to determine the exact legal position of the case.

The conviction of manslaughter could only have been under certain portions of the charge, permitting the jury to find it in case the injury was caused in an attempt of the various persons assembled in the paint shop to avoid an arrest. The language of the court, repeated nearly in the same terms twice, was as follows:

"In this case, if the jury should be satisfied (beyond the

doubt that I have spoken of) that these defendants combined for the purpose of inducing this girl to go to that shop for the purpose of prostitution, and that they did induce her to go, and while at the shop all had connection with her, and, in order to avoid arrest or exposure, threw her out of the window, without the intention of killing her, but by it she received injuries which caused her death, it would be manslaughter, because they were engaged in an act against public morals, and unlawful."

And the court refused to charge that, if the act was done under these circumstances without the concurrence of Knapp, he should not be convicted. Also refused to charge, that if the parties attempted to escape, and one of them, without the knowledge or consent of the other, helped or threw the deceased out of the window, then, none but those actually engaged in the act are liable for the consequences.

The effect of these rulings was practically to hold that parties who have combined in a wrong purpose must be presumed, not only to combine in some way in escaping arrest, but also to be so far bound to each other as to be responsible severally for every act done by any of them during the escape.

It is impossible to maintain such a doctrine. It is undoubtedly possible for parties to combine in order to make an escape effectual, but no such agreement can lawfully be inferred from a combination to do the original wrong. There can be no criminal responsibility for any thing not fairly within the common enterprise, and which might be expected to happen if occasion should arise for any one to do it. In other words, the principle is quite analogous to that of agency, where the liability is measured by the express or implied authority. And the authorities are quite clear, and reasonable, which deny any liability for acts done in escaping, which were not within any joint purpose or

combination.—*Rex v. Collison*, 4 *C. & P.*, 565; *Reg. v. Howell*, 9 *C. & P.*, 437; *Rex v. White*, *R. & R.*, 99; 1 *Bishop's Cr. L.*, § 633–642 (5th ed).

This ruling must have been of controlling weight with the jury. There is evidence tending to show that some person other than Knapp pushed, or threw, the deceased out of the window; but, if the testimony is all before us, it has very little, if any, bearing upon Knapp's complicity in the act which caused her death. He jumped out first, according to the clear current of evidence, and it is not easy to discover in the record, proof of his part in any conspiracy or agreement, in pursuance or execution of which it can be inferred she was put out of the window.

The introduction of the occurrences of the evening, being continuous, was proper to explain the entire transaction, and there was no error in receiving the testimony. It was also proper to allow evidence as to the circumstances under which the dying declarations were taken, in addition to the document itself. Such testimony is proper to show whether it was really taken when the declarant was under the conviction of approaching and inevitable death, as evidence of this should usually be given in advance of proof of the declarations themselves.—See *Queen v. Jenkins*, *L. R.*, 1 *C. C. R.*, 187. The substance of the declarations is relevant to the charges in the information. It was held in *Hurd v. People*, 25 *Mich.*, 405, in accordance with well settled rules of evidence, that the narrative may properly include the entire circumstances attending the fatal occurrence. The declarations are proper as to the same facts which she could testify to.—*Rex v. Sellers*, *Carr. Sup.*, 233; *Roscoe's Cr. Ev.*, 28. Their value depends on their intrinsic probability, and the candor and truthfulness of the person making them, as well as upon the fullness and fairness with which they are taken and reported. Where they are taken

under suspicious circumstances, or drawn out by doubtful means, they are not excluded, but go to the jury for what they are worth. The whole admission is from necessity,— the witness having passed away,—and the objections are therefore confined to the weight and value of the declarations.—*Rex v. Fagent*, 7 *C. & P.*, *238; Rex v. Hayward*, 6 *C. & P.*, *157; Rex v. Reason*, 1 *Str.*, *500; Woodcock's Case*, 2 *Leach*, *563.* See, also, notes to 2 *Leading Cr. Ca.*, *236, and seq.*

As defendant has been acquitted of murder, and can no longer be subject to trial on that charge, it is now more important for him than for the prosecution, to determine upon the admission of these declarations, which are somewhat favorable to him on the only point now left open. It was held in *Scaife's Case*, *Moo. & R.*, *551*, that the prisoner had the same right with the People, to show them. The rule would be very unjust without this application.

We have been in doubt whether, upon the evidence, there was any thing to go to the jury upon the issue of manslaughter, but the matter is not so clearly presented as to authorize us to give any further directions than that the verdict be set aside, and a new trial awarded. It is proper to call attention to the fact that a writ of error is not needed, where there has been no judgment. The case should come up on the exceptions.

The other Justices concurred.