[No. 1535.]

## ALEX HARRIS v. THE STATE.

1. MURDER—PRACTICE—CASE STATED.—To an indictment for murder, the
appellant filed a special plea, setting up, in substance, that, prior to the
indictment of himself and co-defendants, he entered into an agreement
with the prosecuting attorney, whereunder he, on his part, was to turn
State's evidence, and the prosecuting attorney, on his part, was to enter
a *nolle prosequi* as to this appellant; and that, in pursuance of this agree-
ment, he did go before the grand jury and testify truthfully and fully
against his co-defendants, wherefore, he claimed the State should not
prosecute this indictment against him. To this plea the prosecuting at-
torney filed an answer. under oath, alleging, in substance, that he made
no such agreement with the appellant as that set out in his special plea,
but that when he had the appellant brought before the grand jury, he
warned him explicitly that he could not be forced to testify, and, in ad-
dition to said warning, informed him that, after hearing the statement
of the other eight parties held or the murder, one of the said parties
would be released from prosecution, and that it would depend upon the
testimony of each of said parties, and the benefits to be derived there-
from, as to which would be the party relieved; that it would or would not
be him, the appellant, according to the importance of his statements as
compared with the statements of the others; and that, after having heard
the statements of the other parties, he, the attorney, elected to release
one A from prosecution, and to use him as a witness. The trial court over-
ruled the special plea, the case proceeded to trial, and A was used as a wit-
ness against the appellant. *Held*, that on general principles such prac-
tice cannot be tolerated. See the opinion *in extenso* on the question.

2. SAME—CHARGE OF THE COURT.—Certain evidence was introduced in a
trial for murder, going to show that a conspiracy had been entered into
by several parties, including the appellant, to whip the deceased, and
that in furtherance of that conspiracy the deceased was killed. The
charge of the court upon the case thus made presented the proposition
that if several parties agree to tie and chastise another, but not intend-
ing to kill him, and, in furtherance of this agreement, such person was
tied, and then one of the parties to the agreement abandoned the com-
mon design and left, and the party tied was afterward killed by the
other parties to the agreement, the party abandoning the enterprise is,
nevertheless, guilty of murder. *Held*, that the proposition is untenable,
and the charge was erroneous.

3. SAME—CIRCUMSTANTIAL EVIDENCE.—The question at issue being
whether or not the appellant was a principal in the offense, and the
State being forced to rely upon circumstantial evidence to establish that
fact, it was the duty of the trial court to give in charge to the jury the
law governing circumstantial evidence.

APPEAL from the District Court of McLennan.   Tried below before the Hon. B. W. Rimes, County Judge.

The indictment in this case was joint against this appellant, Henry Harris, Ike Austin and George Simons, and charged that they did, on the first of June, 1883, in the county of McLennan, murder one Gabe Austin, by tying a rope around the neck of him, the said Gabe Austin, and dragging him until, by dislocation of the neck, the said Gabe Austin did die.   A severance was had upon the motion of Henry Harris, and this appellant was alone placed upon trial.   He was found guilty of murder in the second degree, and his punishment was affixed at a term of twelve years in the penitentiary.   The opinion of the court summarizes the evidence upon which the conviction was had.

The motion for new trial presented the questions discussed in the opinion.

No brief for appellant has reached the Reporters.

J. H. Burts, Assistant Attorney General, for the State.

HURT, JUDGE.   Appellant was tried and convicted of the murder of Gabe Austin, the conviction being of murder of the second degree, with twelve years punishment in the penitentiary.

In bar of this prosecution defendant pleaded an agreement with the county attorney, as follows:   "And now comes Alex Harris, one of the defendants in the above entitled cause, and says the State ought not to prosecute this indictment against him, because, he says, that heretofore, to-wit, on or about the third day of June, A. D. 1883, he, defendant, came in and surrendered himself, and Colonel Austin and Judas Austin and Noah DeGrate, and others, and were duly arrested by virtue of some warrant or process issued by a justice of the peace for precinct No. 1 of McLennan county, Texas, or were arrested on suspicion without warrant, and that on or about the fourth day of June, A. D. 1883, Eugene Williams, Esq., the duly elected and qualified county attorney of McLennan county, and the proper law officer of the government of the State of Texas, and the said Eugene Williams, acting for the State of Texas, finding that the above named parties had been arrested only on suspicion of murdering one Gabe Austin in McLennan county, State of Texas, on the first day of June, 1883, and there being positively no evi-

dence upon which the grand jury could find and present a bill of indictment, or upon which a jury could base a conviction, and believing that said Ike Austin and the said George Simmons were the guilty parties, if any of the above named parties were, and that evidence sufficient could not be produced before the grand jury of said county to enable them to find a bill of indictment against Ike Austin and George Simmons, and that the grand jury could not find a bill of indictment against any one for the killing of Gabe Austin without the evidence of this defendant, the said Eugene Williams, county attorney as aforesaid, made an agreement with this defendant, Alex Harris, that he, the said Eugene Williams, would not prosecute this defendant, Alex Harris, and if a bill of indictment should be presented into the honorable District Court of McLennan county against him for the murder of Gabe Austin, he would enter a *nolle prosequi* in the case as to this defendant, if defendant would well and truly testify as a witness for the State in the case against Ike Austin, George Simmons, Henry Harris, Judas Austin, Colonel Austin, Noah DeGrate, and honestly and fairly tell all he knew about the case before the grand jury aforesaid, and upon the final trial of the case. And defendant says that this proposition was accepted by him, defendant, and that, at the instance and by the order of said Eugene Williams, county attorney as aforesaid, he was taken from the common jail of McLennan county, Texas, where he was then confined upon a charge for the murder of Gabe Austin, before the grand jury of McLennan county, then in session, and that he was duly and regularly sworn as a witness before said grand jury by its foreman of said grand jury, and that he did then and there before said grand jury testify fairly and fully as to all the facts and circumstances he knew of in connection with the killing of the said Gabe Austin; and defendant says, in pursuance of this agreement, and relying upon the promise made him by the State's officer, Eugene Williams, Esq., that the defendant promptly and without hesitation or reservation testified before said grand jury against his co-defendants, Ike Austin, George Simmons, Henry Harris, Judas Austin, Colonel Austin, Noah DeGrate, and fairly and honestly told all he knew about the case. And defendant says that the said Ike Austin, and the said George Simmons, and the said Henry Harris, and the said Judas Austin were, upon his (defendant's) evidence, indicted with this defendant for the murder of Gabe Austin, and that upon his said evidence before said

grand jury, the said grand jury indicted Colonel Austin and
Noah DeGrate as accomplices to the murder of said Gabe Aus-
tin; all of which will more fully appear by the two bills of in-
dictment now on file in the District Court of McLennan county,
and numbered respectively No. 4232 and No. 4236.

"That this defendant has since been confined in the jail of
McLennan county as a witness in said causes as he thought.
Defendant here avers that when he was carried before the grand
jury of this, McLennan county, in this case, that he fairly and
honestly and truly told them all he knew about the case, and
has never refused at any time to fairly and honestly testify in
the case, telling all he knew, keeping nothing back. And de-
fendant says that notwithstanding he has always been ready
and willing to testify in the case, and in any case for the murder
of Gabe Austin that may be on file in the District Court of
McLennan county, based in whole or in part on his evidence be-
fore the grand jury, as aforesaid, and is now ready and willing to
testify and give evidence in said cases and in this cause, that
the defendant is now charged by indictment to answer the State
with Ike Austin, George Simmons, Henry Harris and Judas
Austin and Colonel Austin and Noah DeGrate, with the murder
of Gabe Austin. Wherefore defendant entered this his special
plea, and says that the State of Texas ought not further to pro-
secute this case against him, and prays for his dismissal."

To this plea the county attorney replied as follows: "Now
comes Eugene Williams, county attorney of McLennan county,
and, in answer to special plea of defendant Alex Harris herein,
on the twenty-sixth day of June, 1883, filed, on oath says that
on the second day of June, 1883, said Harris surrendered himself
to the properly constituted authorities of said county as therein
in said plea stated; that afterward, to-wit, on or about the
fourth day of June, 1883, the said Harris was brought before the
grand jury of said county, and, after being warned that he
could not be forced to testify, nevertheless did testify to certain
evidence implicating the defendants herein in the murder of
Gabe Austin; that at the same time affiant stated to said Harris,
in addition to the warning already set out, that, after hearing
the statements of the other parties to said murder, that one of
the parties would be released from prosecution and that it would
depend upon the statements of each of the accomplices (or par-
ties) to the murder, and the benefits to be derived therefrom, as
to whether or not he would be the party released and to be used

as a witness. Affiant further states that there were eight of the supposed parties to the murder in the jail of McLennan county, and that, to the best of affiant's recollection, all of them were brought before the grand jury (except one Judas Austin) and questioned touching said murder, and that before testifying each of said parties was warned as above set out, and promise of release made to each on the terms hereinbefore stated as having been made to said defendant Harris. Affiant further says that, acting for the State and in the presence of the grand jury of said county, he warned defendant Harris, that he would not force him (Harris) to testify before said jury, but that he would be given an opportunity to do so, and if, after hearing the statements of others, the State could be best served by releasing him from prosecution, and making of him a witness, such would be done; but that, if the interest of the State could best be served by releasing any other of the accomplices to said murder, that such other would be released, and that said Harris should receive no benefit from the testimony given before said grand jury.

"Affiant further states that at no time did he, or any one else by his authority, promise absolutely to release said Harris from prosecution upon his testifying before said grand jury or any where else, or for any other service; and that affiant made no other or further agreement than is herein set out. Affiant further says that the indictments in causes Nos. 4232 and 4236 were not found on the evidence alone of said Alex Harris, but upon the evidence of divers other witnesses, including also the co-defendant (Henry Harris) of said Alex Harris and the defendants in cause No. 4236. Affiant further says that the State under the agreement aforesaid has selected one Colonel Austin, a defendant in cause No. 4236, and that at the proper time the indictment in said cause, as to said Colonel Austin, will be dismissed, and that the said Colonel Austin will be used as a witness in said causes (*Deo volente*)."

Colonel Austin was introduced by the State as a witness, and testified to facts clearly involving the defendant in a conspiracy the result of which, the State claims, was the murder of Gabe Austin. Appellant did not object to Colonel Austin being sworn as a witness in the case upon the ground of incompetency, or upon any other ground, but insists that a conviction obtained by such means should not be permitted to stand.

Should a conviction obtained by such means as are shown in the answer of the county attorney be sustained by this court?

Strong and irrefragible proof would be required to induce us to believe that the county attorney would, to secure a conviction, offer a pecuniary bribe to witnesses. But a bribe offered to a witness, to disclose fairly and fully all of the facts in the case, does not approach the contract contained in this answer. In a proper case, the life or liberty of a witness may be offered him, upon condition that he testify faithfully and fully to all the facts in a case in which his accomplices are involved; but we have yet to find a case in which the parties suspected were permitted to enter the list as competitors for the high prize of life or liberty, success in this singular judicial contest made dependent upon superior accomplishments in the art of testifying in such manner as to secure the conviction of his fellow competitors. Whilst the victorious party may be made to rejoice and be exceedingly happy, the result to the less accomplished—the most inexperienced, but more honest and conscientious—by such a contest, is terrible indeed. Who would like to be made the victim of such a contract? Does public justice demand a resort to such means? Will public justice sanction it? Does this great commonwealth seek to convict and punish her citizens by such unjust, unfair, yea, foul means, as are shown. in the anwer of the county attorney? Is Texas a tyrant and her people tyrants? Would the best, most law abiding citizen of this State be willing to live under a code of laws which would sanction such procedure?

Has this defendant had a fair trial? We think not, nor will we sanction a conviction upon testimony coming from such a source as that of Colonel Austin. This is not a pure stream; the fountain is corrupt. He is not merely an accomplice; he is a bribed accomplice, his life or liberty being the reward—bribed, not simply to testify fully and honestly, but to exceed the rest of his competitors in testifying to facts which would be most *beneficial* to the State. Not only so, but at the very time he was upon the witness stand, the indictment against him for the murder of Gabe Austin was hanging over him. Was there any chance of escape for defendant?

A witness thus situated by the terms of the contract and the pendency of the indictment would, we believe, swear any and all things. But be this as it may, and be this witness competent or incompetent, we, nevertheless, will not sustain a conviction obtained in such manner. Common justice revolts at such means. Such a proceeding is repugnant to the spirit and genius of

our criminal codes. While it is true that in some cases the life or liberty of an accomplice is offered him upon condition that he as a witness disclose fairly and faithfully all the facts relative to the crime, a race, however, is not made and the accomplices entered, with the life or liberty of the competitors as the stake. In this race there should be some very fast running (swearing); the result being, perhaps, the life, and at least the liberty, of the swiftest, and death or the penitentiary to the losers.

It appears from the evidence of this witness, Colonel Austin, that five persons and the witness, in order to save Gabe Austin from the penitentiary, as well as to punish him, conspired to go to his house at night and "whip him," because Gabe had been living incestuously with his sister's daughter. At the appointed night the parties met in front of Gabe's house, distant about two hundred yards, defendant being one of them, all disguised with flour on their faces. They left, going in the direction of Gabe's house, saying that they were going to whip him. That he, witness, did not know whether they went to the house of Gabe or not, witness remaining with the horses. While holding the horses witness fell asleep, when three of the party returned, got their horses and left. Witness then went home. On next morning witness went to the house of Gabe, and found him lying on his face some fifty or seventy-five yards from his house, dead. Witness made no examination of the body, but saw that the skin was broken on his neck from ear to ear, that his eyes were not protruding; saw where something had been dragged across the road, like the body of a man. Other facts were sworn to by this witness tending to connect the defendant with the conspiracy.

By Jane Austin, wife of the deceased, these facts were shown: That on Friday night of the first day of June, 1883, she was aroused from her sleep by the sound of pistol shots; that she heard two shots, and saw some six or seven men in the house, who were scuffling with deceased. She did not recognize any of the party. Her husband Gabe was sleeping near the door on the floor. She saw him no more until next morning; he was lying on his face, dead; his neck was skinned. She picked up a quirt lying near the fence and a few feet from the road.

Jonas Austin, son of Gabe, testified that some men came to their house on Friday night and fired off their pistols, and when he awoke he saw four men scuffling with Gabe on the floor near the door. They pulled him out of the door, and the last he saw they were dragging him feet foremost from the house. They

looked like white men; only one of them spoke, and he spoke like a white man.  He, the witness, went to the door, and this man said:  "Go back in the house and hush, or I will shoot your damned head off."  Did not recognize any of the party.  Saw his father next morning in the condition described by the other witnesses.  The quirt was recognized and identified as the property of defendant.

The above are the material facts for the State, independent of the confessions of defendant, which were also put in evidence by the State, and were in substance as follows:  "On the third of June defendant came inside the jail yard and said he desired to give himself up, and asked if I (Stephens, the witness) was an officer."  Stephens replied that he was a jail guard, but would go and see Mr. Harris, the sheriff.  He returned in a few moments, and, defendant still being in the yard, witness asked him, defendant, what was the matter.  Defendant said that he was in that difficulty—the killing of Gabe Austin.  That he and others (naming them) had agreed to whip Gabe Austin, and that they went to his house for that purpose, but when they began to scuffle with him, and were acting more cruelly with him than they had agreed upon, he left the crowd and went home.

The State proved by George Yates that defendant, on the second day of June, went to the store of one Mr. Smith, and there gave a similar account of his connection with this matter; stating that he was not present when Gabe was killed; that when they got to fighting he left and went home; that they went to Gabe's house to whip him, but when they got to scuffling he went off home.  This witness was corroborated by Smith, introduced by defendant.

We have given enough of the evidence for the purpose we have in hand, which is to show that there are two theories.  1. That there was a conspiracy between these parties to whip the deceased, and that in the furtherance and execution of this conspiracy the deceased was killed, and that, therefore, all engaged in the conspiracy are guilty of murder.  And upon this subject the learned judge charged the jury as follows:  "You are further instructed that if you believe from the evidence, beyond a reasonable doubt, that defendant and others combined and acted together, and went to the house of the deceased with the intent and design to whip said Gabe Austin, and in pursuance of a common purpose they tied deceased with a rope and dragged him from his house, and the death of said Gabe Austin resulted

from said tying and dragging, and that tying and dragging with a rope was reasonably calculated to produce death, and defendant was present and participated in the act, then, in contemplation of law, he would be equally liable with the others, although the intent of the parties was only to whip the deceased, and this, too, although the deceased left and abandoned the common design, if any, before the final consummation of the death of the deceased, and although the killing of the deceased was not contemplated by the parties. But in this connection you are further charged that, in order to justify the conviction of the defendant as a principal in this case, the evidence must show that he was present and consented and participated in the tying of the deceased for the purpose of whipping him, and that the death of the deceased resulted in perpetration of the original act designed, in the manner designed; and if the evidence fails to establish the above proposition of facts to your satisfaction beyond a reasonable doubt, it is your duty to acquit."

This proposition is embraced in the above charge: That, if parties agree to tie and whip A, not attending to kill him, A being tied, though one of the parties should then abandon the common enterprise and leave, A being killed afterward by the others, the party thus abandoning the enterprise is, nevertheless, guilty of *murder*. To condense: A, B and C agree to tie and whip D; D. is tied by all, without intending to kill; C then abandons the enterprise and leaves; A and B kill D, by means of the rope with which he is tied by all, after C leaves; therefore C is guilty of the offense of which A and B are guilty.

Is the above a correct proposition? We have very serious doubts of its correctness.

What is the correct rule applicable to this subject? It is this: "There can be no criminal responsibility for anything not fairly within the common enterprise, and which might be expected to happen if occasion should arise for any one to do it. In other words, the principle is quite analogous to that of agency, where the liability is measured by the express or implied authority." (*People* v. *Kroff*, 26 Mich., 112.)

But we are not objecting so much to the error in this charge as to the fact that there is no charge presenting the theory of the defendant. The above charge presumes that defendant was present, assisting or consenting to the tying of deceased. This presumption is supported by the theory of the State, there being evidence *tending* to the conclusion that defendant was not

only present at this point of time, but at the time deceased was killed. We are not discussing the strength of this testimony. This is a presumption, for evidently there is no positive proof of either of these conclusions. They are simply within the scope of the tendency of the State's evidence.

Let us return to the charge. Most unquestionably there is evidence in this case—evidence introduced by the State, as well as that adduced by defendant—tending to show that defendant abandoned the common enterprise, and left before the deceased was even tied. This being the case, it was evidently the duty of the learned judge presiding to have submitted to the jury the law applicable to this state of facts. This was not even done negatively, whereas it should have been done affirmatively.

Again, there was no positive evidence that defendant was present at the place of the killing. His presence was inferred, presumed, from other facts. A case of circumstantial evidence is presented, unless it is relieved of this character by the confession of defendant. What did he confess? That he was present at the time of the killing? By no means. His confession went to this extent, and to this only, upon this point: That he was present up to the time when they began to scuffle with deceased, when he left. This is not positive evidence that defendant was present when Gabe was killed; but from this it may be presumed, deduced, that he remained up to the time of the killing. Hence, the evidence tending to prove that defendant, as a principal, killed Gabe Austin was purely circumstantial, and the law applicable to that character of case should have been given in charge to the jury. This defect in the charge, as well as the defect above indicated, was called to the attention of the court by the motion for new trial.

Believing that the defects in the charge which we have noticed were prejudicial to the defendant's case, and believing, further, that he has not had a fair and impartial trial, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered at Tyler, March 28, 1884.

[REPORTERS' NOTE.—After the disposal of the case at Tyler by the above opinion, the counsel for the State moved for a rehearing. The termination of the Tyler term being then near at hand, the cause was transferred to the ensuing term at Galves-

ton, and there the motion for rehearing was considered and determined by the following opinion.]

## ON REHEARING.

HURT, JUDGE.   We will notice the grounds urged for rehearing in the order presented by the motion.

1.   "That the special plea of defendant is not supported by the evidence."   This is true, and the opinion in this case is not based upon the assumption that it—the plea—is sustained by the evidence.   In the opinion it will be found that the answer of the State, to the defendant's plea, discloses that methods were resorted to in order to secure a conviction, which, in the opinion of this court, should not be tolerated.

2.   "That the question of public policy involved in this answer was not fully appreciated by this court; that the law governing convictions upon the evidence of accomplices should obtain and be the rule."   We have carefully re-examined this answer to defendant's plea, and found nothing therein to change our views of its purport and meaning.

3.   We cannot agree with the proposition contained in the third ground, to the effect that the State can use any and all means to secure the conviction of a citizen, unless forbidden by the statute relating to the *competency of witnesses.*   Facts may be relevant or admissible, and the witness deposing to them may be competent, still it does not always follow that with these facts and such a witness, methods may be used to convict a party which are intolerable, and repugnant to the spirit and genius of a free people.

4.   The fourth ground of the motion is in substance the same as the third.

The fifth, sixth, seventh and eighth grounds relate to the charge of the court, and endeavor to show that the charge of the court was correct upon all of the points held erroneous in the opinion.   We have very carefully compared the charge with the statement of facts, and are clearly satisfied that it is erroneous in the particulars indicated in the opinion.

Since the opinion in this case was written, we have formed the acquaintance of Mr. Williams, the county attorney of McLennan county, who prosecuted this case in the court below. He is quite youthful, having just attained his majority, and is a young gentleman of fine ability and great vigor and energy.

We are fully satisfied that in making the agreement between the State and this defendant, and his co-defendants, with regard to their testimony before the grand jury, he was far from intending any bribe to the parties, or any wrong whatsoever, but that in all he did he was actuated by the purest and best motives, to wit, an honest desire to serve the State by ferreting out, prosecuting and bringing to merited punishment, the parties who were most guilty in the perpetration of a horrible assassination.

If our language in the opinion has any tendency even to convey the impression that any moral or intentional wrong attaches to his action in the premises, then we disclaim all such tendencies, and regret our misfortune in the selection of the language used. We are satisfied that no intentional wrong is imputable to Mr. Williams, but that the error committed was one of those mistakes which youthful zeal might readily make, without the slightest thought or intention to violate even the proprieties, much less the sterner demands of right, justice or law.

The motion for rehearing is overruled.

*Motion overruled.*