10243

STATE v. LESESNE *ET AL.*

(100 S. E. 62.)

1. ASSAULT AND BATTERY—COMMON DESIGN—SUFFICIENCY OF EVIDENCE.
   —Evidence that four defendants all attempted to escape when
   officers endeavored to arrest them for gambling, etc., *held* to sustain
   jury finding that defendants had formed a common design to escape
   before time one of their number committed an assault and battery
   on one of the officers.

2. CRIMINAL LAW—REQUESTED INSTRUCTION.—Refusal of a requested
   instruction which was only a corollary of a proposition already
   charged, and which the Court stated he thought was covered by
   other portions of his charge, *held* not reversible error.

Before SEASE, J., Sumter, Fall term, 1918.    Affirmed.

Ben Lesesne, Mat Hannibal, John Richardson and Cunningham White were convicted of assault and battery, and appeal.

The following facts are set forth in the record:

The defendants, Ben Lesesne, Mat Hannibal, John Richardson, and Cunningham White were jointly indicted with one Harrison Prince for assault and battery of a high and aggravated nature.    On the night on which the indictment charges the crime was committed the five defendants named in the indictment were playing "skin," a negro card game, at the home of Harrison Prince, a few miles from Mayesville, in Sumter county.    Three officers and three assistants raided the game.    At the inception of the raid the light in the house was extinguished.    All the occupants of the house were taken.    The woman was not placed under arrest.    It was then discovered that one of the officers, Mr. H. A. Boykin, had received a wound on the head, which the State charged was inflicted by a frying pan in the hands of the defendants.    There was no evidence tending to establish who, if any one, struck Mr. Boykin.    The frying pan was

found on the floor near Mr. Boykin with a piece broken out, but. witnesses for the State testified that the break was an old one.

The house was surrounded. Mr. H. A. Boykin testified that he went to the front door; that a negro woman was sitting in the front door, and as he walked up the front step, they all made a break and ran; that he didn't know who broke first, but that the woman was sitting near him, and she blew the light out; that he ran in and caught hold of two negroes; that he was struck, but that he could not say whether by one of his captives. He testified:

"A. One of them hit me in the head with a pan, iron of some kind, a frying pan, and knocked me unconscious.· Q. Could you tell whether one of the two negroes that you had your hand on? A. No, sir; I could not. Q. Was it in the dark? A. Yes, sir. Had a small fire in the fireplace, and he was standing between me and the fire, and when he hit me, he stooped down and picked it up by the fire."

Another officer, Mr. Bradley, testified that he met one negro at the door on the opposite side of the house and seized him; and that he caused a light to be made, and found one negro up on the wall at the side of the house, and another hid in the corner.

The defendants pleaded guilty in the magistrate's Court at Mayesville to the charge of gambling, and four of them paid each a fine of $30 and one $20. Prior to the trial under the indictment in this action one of the defendants, Harrison Prince, pleaded guilty, and was sentenced to pay a fine of $100 or serve three months at hard labor. The remaining four defendants, the respondents herein, entered pleas of not guilty, and, the four being tried jointly, upon a verdict of guilty (their motion for new trial upon the grounds appearing in the exceptions being overruled) were sentenced each to pay a fine of $200 or serve six months at hard labor. From this sentence all within due time gave notice of appeal.

At the close of the evidence for the State the defendants moved for a direction of verdict upon the grounds appearing in the exceptions. The motion was overruled.

All four of the defendants were sworn as witnesses. At the close of all the evidence the motion for direction of verdict was renewed upon the same grounds, and was again overruled.

His Honor was requested to charge the jury as set forth in the exceptions. Whereupon he charged the jury in the language also set forth in the exceptions.

In his general charge his Honor charged the following propositions:

"If you find that another person on that occasion did commit the assault and battery, and you find that one or more or all of these four defendants aided and abetted another person giving assistance in the assault and battery, then they would be as guilty as the person who did it, whether the person is on trial at this term or not. If it has been proven beyond a reasonable doubt to you that these defendants acted in concert amongst themselves and in pursuance of a common design previously entered into to commit the offense alleged in the indictment, then all would be guilty."

The motion for new trial was made upon the grounds set forth in the exceptions, and was overruled.

The appellant's attorneys submitted that his Honor, the Circuit Judge, erred in the following particulars:

1. In overruling appellants' motion for direction of verdict made upon the following grounds: That the defendants were jointly indicted as principals, and that there was no proof, (1) That any particular one of them committed the crime; or (2) that the crime was committed in the pursuance of any joint or common enterprise or undertaking.

2. In refusing to charge at the request of the defendants: "Is there anything further you wanted charged?"

"Mr. McLemore: I think we would be entitled to have them charged that, even where they might have been found to have been in a common undertaking or design, if any one or more of the defendants originally before the Court departed from the common design or undertaking or enterprise, and formed his own independent design, and in pursuance of that independent design he did it, he alone would be responsible for his act.

"Court: I think that is covered by this proposition, Mr. McLemore, that is, if the offense alleged to have been committed started before the officers got there, being a misdemeanor and not a felony, the common design or common undertaking or enterprise that I have instructed about is directed solely to the proposition contained in this indictment, to wit, assault and battery. Take the record."

And if the language of his Honor be considered a modification of the defendants' request, then it was error so to modify the request.·

3. In overruling motion for new trial made upon the following grounds: (1) There is no evidence that the act charged in the indictment was committed by the defendants, or any of them. (2) There is no evidence that the act charged in the indictment was committed by the defendants, or any of them, or by any other person then and there present, in pursuance of any common undertaking or design entered into by them. (3) The defendants, it is respectfully submitted, were entitled to have the jury charged that if the defendants engaged in a common undertaking or design, and thereafter any one of them departed from the common plan, and in pursuance of his own design committed the act charged, then only such one so committing the act, would be guilty thereof.

*Mr. Lucian W. McLemore,* for appellant, submits: *Even where several persons are joined in a common undertaking or design, if one departs from such common undertaking or*

*design, and forms his own independent design, and in pursuance of that independent design commits the crime charged, he alone is responsible:* 67 S. C. 320; 36 S. C. 524; 15 S. E. 588; 49 S. C. 550; 27 S. E. 526; 83 S. C. 82; 16 C. J. 128 (sec. 115); 41 Kansas 115; 13 Am. State Reports 262; 59 Mich. 553; 26 N. W. 699; 80 Va. 143, at page 450; 8 Tex. App. 211; 27 Ala. 37; 26 Mich. 112; 1 Bish. Cr. Law (5th Ed.), secs. 633-642; 1 Bishop Cr. Law (7th Ed.), secs. 611, 634, 635, 637; 65 S. W. (Tex.) 1102; 107 S. C. 443; 93 S. E. 125. *The presiding Judge should have charged without modification defendants' request to charge: "That even where they might have been found to have been in a common undertaking or design, if anyone or more of the defendants originally before the Court departed from the common design or undertaking or enterprise and formed his own independent design, and in pursuance of the independent design he did it, he alone would be responsible for his act:"* 67 S. C. 320; 49 S. C. 550; 97 S. C. 441; 81 S. E. 667.

*Solicitor F. A. McLeod,* for State-respondent.

July 15, 1919.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

Practically there are but two questions presented by the exceptions, the first of which is whether there was any testimony from which a reasonable inference could be drawn by the jury that there was a common design on the part of the defendants to make their escape prior to the time when the assault and battery was committed.

It may be stated as a general proposition that, if parties are engaged at night in the commission of an unlawful enterprise common to them all, they will endeavor to escape arrest, provided there are reasonable grounds for supposing

that their attempt may be successful. In such cases, the attempt to escape arrest may be regarded as incidental to the commission of the common and unlawful design.

In the case under consideration, however, there are facts from which a reasonable inference may be drawn that the defendants planned, before the officers appeared, to make their escape, in case of an attempted arrest. A negro woman was sitting at the front door apparently on guard, for she blew out the light. When the officer walked up the front step, all the defendants made a break and ran. The unanimity with which the defendants attempted to make their escape indicated either that they were obeying the impulse natural to them, or that they had planned to escape, before the arrests could be made by the officers.

The exceptions raising this question are overruled.

The next question is whether his Honor, the presiding Judge, charged the jury as requested by the appellants' attorney. This question is raised by the second exception. His Honor, the presiding Judge, certainly did not, in express terms, refuse to charge the request. On the contrary, he stated that he thought it was covered by other parts of his charge. Furthermore, the request was but a corollary of the proposition, which he had already charged.

. Appeal dismissed.

MESSRS. JUSTICES WATTS, FRASER and GAGE concur.

MR. JUSTICE HYDRICK, *dissenting.* I agree with the Chief Justice that the evidence is sufficient to warrant a reasonable inference that appellants were guilty of conspiracy to gamble and to avoid arrest by flight, if the officers of the law should come upon them while gambling. But that is not the issue to be decided. They were not indicted for a conspiracy to avoid arrest, if, indeed, that is indictable, but for assault and battery. The real issue, therefore, is whether proof of facts and circumstances which warrant an infer-

ence of a common design to avoid arrest for gambling by flight is sufficient to warrant the further inference of a common design to commit an assault and battery upon an officer who might attempt to arrest them; for upon that theory alone they were convicted, since there is no evidence that either of them aided, abetted, or encouraged the one who actually committed the assault and battery, who was, no doubt, the one that pleaded guilty. The question, therefore, is, Can a conspiracy to commit an assault and battery be legally inferred from proof of a common purpose to avoid arrest by flight? I think it clear, on reason and authority, that it cannot. Bishop, in his work on Criminal Law (section 634, vol. I), says:

"Even where persons are unlawfully together, and by concurrent understanding are in the actual perpetration of some crime, if one of them of his sole volition, and not in pursuance of the main purpose, does a criminal thing in no way connected with what was mutually contemplated, he only is liable. Thus if, in England, poachers join in an attack on the gamekeeper, and leave him senseless, then, if one of them returns and steals his money, this one alone can be convicted of the robbery. So, if two have committed a larceny together, and one suddenly wounds an officer attempting to arrest both, the other one cannot be convicted of this wounding, unless the two had conspired, not only to steal, but to resist, also, with extreme violence any who might attempt to apprehend them."

Again:

"Sec. 635. If several are out committing a felony, and, on alarm, run different ways, and one to avoid being taken maims a pursuer, the others are not guilty parties in the *mayhem.*"

At section 637, he says:

"If two combine to fight a third with fists, and death accidentally results from a blow inflicted by one, the other

also is responsible for the homicide. But if the one resorts to a deadly weapon without the other's knowledge or consent, he only is then liable."

In *People v. Knapp*, 26 Mich. 112, Knapp was charged with the murder of a young woman on the following facts: He with several others carried deceased into a house owned by Knapp for immoral purposes. While there, she either fell or was thrown from a window, and sustained injuries from which she died. There was no testimony that Knapp himself did the act, and he was convicted on the theory that he was responsible for the conduct of those who did it. The trial Court charged the jury that, if defendants combined for the purpose of inducing the deceased to go into the house for immoral purposes, and, while there, in order to avoid arrest or exposure, threw her out of the window, without intending to kill her, it would be manslaughter, because they were engaged in an act against public morals, and unlawful; and refused to charge that, if the act was done, under the circumstances stated without the concurrence of Knapp, he should not be convicted; and, also refused to charge that if the parties attempted to escape, and one of them, without the knowledge or consent of the others, helped or threw deceased out of the window, then only the one who actually did the act is responsible. Upon this evidence and charge Knapp was convicted of manslaughter. On appeal, the Supreme Court reversed the conviction, saying:

"The effect of these rulings was practically to hold that parties who have combined in a wrong purpose must be presumed, not only to combine in some way in escaping arrest, but also to be so far bound to each other as to be responsible severally for every act done by any of them during the escape.

"It is impossible to maintain such a doctrine. It is undoubtedly possible for parties to combine in order to make

17—112

an escape effectual, but no such agreement can lawfully ·be inferred from a combination to do the original wrong. There can be no criminal responsibility for anything not fairly within the common enterprise, and which might be expected to happen if occasion should arise for any one to do it.    In other words, the principle is quite analogous to that· of· agency, where the liability is measured by the express or implied authority.    And the authorities are quite clear, and reasonable, which deny any liability for acts done in escaping which were not within any joint purpose or combination.    *Rex v. Collison,* 4 C. & P. 565; *Reg. v. Howell,* 9 C. & P. 437; *Rex v. White,* R. & R. 99; 1 Bishop's Cr. L. (5th Ed.), secs. 633-642." ·

If appellants were lawfully convicted upon the evidence adduced, the necessary logical result is that, if the officer had been killed, appellants could have been convicted of murder. Would this Court sustain a conviction of murder upon such evidence?    If not, the judgment should be reversed.

See note to *People v. Lawrence,* 68 L. R. A. 193.