KELLY, J.
(dissenting). With this decision, the majority improperly extends the reach of Michigan’s aiding and abetting statute, MCL 767.39. It will now include a rationale for finding criminal liability without the requisite element of intent.
*21 I agree with the Court of Appeals decision in this case. A defendant cannot be convicted of second-degree murder under an aiding and abetting theory where the defendant did not intend the act that causes the death. In this case, defendant Robinson intended only to beat the victim, and the beating was not the cause of death. In order to convict Robinson of aiding and abetting murder, the majority must append language to the statute.
It currently states:
Every person concerned in the commission of an offense, whether he directly commits the act constituting the offense or procures, counsels, aids, or abets in its commission may hereafter be prosecuted, indicted, tried and on conviction shall be punished as if he had directly committed such offense. [MCL 767.39.]
The majority effectively adds to it the phrase “as well as the natural and probable consequences of any such crime.” Reading language into a statute to reach a result not intended by the Legislature is an abuse of this Court’s power.
PROPER STANDARD FOR REVIEW OF FACTS
I concur in the majority opinion’s “Facts and Procedural History” except to the extent that it picks and chooses among the trial court’s findings of fact relating to evidence of defendant’s intent. There was no evidence establishing that Robinson was aware of or shared codefendant Pannell’s intent to kill. Instead, the trial court’s findings support only a conviction of assault with intent to do great bodily harm less than murder. MCL 750.84.
In fact, the trial judge’s findings actually preclude Robinson’s conviction of second-degree murder. One of *22 the judge’s most pertinent determinations was that Robinson did not share or know of Pannell’s intent to kill. In its 18-page opinion, the Court of Appeals thoroughly reviewed the judge’s factual findings and correctly held that Robinson had been improperly convicted of second-degree murder. It observed:
The judge’s factual findings that
• Robinson “agreed” and “understood” he was “only there to beat up” the victim, and
• the shooting “was beyond the scope of what [Robinson] had intended to have happen; and
• Robinson intended to inflict great bodily harm only, require that his conviction of second-degree murder, as an aider and abettor, be reversed.
The judge did not recognize that since the death of the victim did not result from injuries inflicted during the physical assault committed by Robinson with the intent .to inflict great bodily harm only, Robinson could not be found guilty of second-degree murder because the victim of the physical assault [as the judge put it] “happened to die.” Robinson could properly he [sic] convicted of second-degree murder as an aider and abettor only if he provided aid to Pannell in killing the victim with the intent to so aid Pannell in killing the victim, sharing or aware of Pannell’s intent to kill. [People v Robinson, unpublished opinion per curiam of the Court of Appeals, issued April 29, 2004 (Docket No. 237036), slip op at 8, 14 (emphasis in original).]
This Court, like the Court of Appeals, should defer to the trial court’s findings of fact, setting them aside only if they are clearly erroneous.
As the Court of Appeals observed, “Another finder of fact, a jury or another judge, might have assessed Robinson’s credibility and the other evidence differ *23 ently [finding sufficient evidence to support a conviction of second-degree murder].” Id., slip op at 4. But this judge did not. The trial court’s factual determinations simply do not include the necessary element of shared or known intent to support a second-degree murder conviction using an aiding and abetting theory.
Facts are indeed “stubborn things,”[1] and we are not the finders of fact here. Like the Court of Appeals, we normally apply the law only to the facts as found by the trial court. The rule is that those findings may not be set aside unless they are clearly erroneous. MCR 2.613(C). Thus, this Court’s review of the factual record is limited. But the majority in this case is not following the rule.
“NATURAL AND PROBABLE CONSEQUENCES” CANNOT SUBSTITUTE FOR REQUISITE INTENT UNDER AN AIDING AND ABETTING THEORY OF PROSECUTION
As the majority correctly points out, aiding and abetting is not a separate substantive offense. It is simply a theory of prosecution that permits imposing vicarious liability on accomplices if they share or have knowledge of the principal’s intent.[2]
*24 The majority asserts that “evidence of a shared specific intent to commit the crime of an accomplice is [not] the exclusive way to establish liability under our aiding and abetting statute.” Ante at 7. The majority argues an alternative theory of culpability that extends criminal liability beyond the “natural and probable consequences” of the crime a person aids or abets. Ante at 9. As Justice CAVANAGH notes in his dissent, what matters here, even under the majority’s rationale, “is whether this death was the natural and probable consequence of this beating.” Ante at 18 (emphasis in original). Instead, the majority would have the death by gunshot flow naturally from the beating, contrary to the trial judge’s specific finding that Robinson intended to inflict great bodily harm alone.[3]
The defendant in People v Knapp[4] was granted a new trial because the victim’s death was not “part of the ‘common enterprise’ of prostitution because one would not expect it ‘to happen if the occasion should arise to [throw the victim out a window].’ ”[5] Ante at 10, quoting Knapp, supra at 115. However, the “common enterprise” was a core issue in Knapp. In fact, the prosecuted “common enterprise” in Knapp was rape and murder, not prostitution.
The evidence for the prosecution tends to show that the deceased was, before the accident, in the upper story of a building belonging to defendant, and used as a paint shop, in Howell, in company with him and several other young *25 men, and that they had sexual intercourse with her; and this was claimed by the prosecution to have been forcible, and against her will, and that she had been forcibly taken there for that purpose. [Id. at 113 (emphasis added).]
The defense claimed that there was no common purpose or offense at all. Rather, the death “was either accidental, or caused by some act in which [the defendant] had no part.” Id. at 114.
The conviction of manslaughter could only have been under certain portions of the [trial court’s] charge, permitting the jury to find it in case the injury was caused in an attempt of the various persons assembled in the paint shop to avoid arrest. [Id.]
The jury was able to find the defendant guilty of manslaughter because the court’s charge allowed it to find that he, along with the others, was “ ‘engaged in an act against public morals, and unlawful.’ ” Id. at 115. And, that “ ‘in order to avoid arrest or exposure, [they] threw her out of the window ....’” Id.
On appeal, this Court did not approve of the trial court’s charge to the jury:
The effect of these rulings was practically to hold that parties who have combined in a wrong purpose must be presumed, not only to combine in some way in escaping arrest, but also to be so far bound to each other as to be responsible severally for every act done by any of them during the escape.
It is impossible to maintain such a doctrine. It is undoubtedly possible for parties to combine in order to make an escape effectual, but no such agreement can lawfully be inferred from a combination to do the original wrong. There can be no criminal responsibility for anything not fairly within the common enterprise, and which might be expected to happen if occasion should arise for anyone to do it. [Id. (emphasis added).]
*26 In the case at hand, the trial court found that the common enterprise was to beat the victim. There was no common enterprise to kill the victim. Robinson went along “only to beat up” the victim. Robinson, supra, slip op at 8, 11, and 13. In Robinson’s words, “it was understood between us that we were going to f*** him up.” As a practical matter, :P**mg up someone necessarily entails leaving them alive. In the context of this case,[6] it most likely means to “put [the victim] in an extremely difficult or impossible situation.”[7]
[8]Offensive as the word is, it is not used to mean “to kill.” We have many other slang words that mean “to kill,” such as “bump off,” “ice,” “knock off,” “waste,” “rub out,” and “whack.” Applying the trial judge’s factual findings, it is clear that Robinson agreed to harm the victim, not to kill him.
The majority cites People v Chapman,[8] in which this Court held that a defendant is “ ‘responsible criminally for what of wrong flows directly from his corrupt intentions....’” See ante at 10. The more complete citation contained in Chapman is:
“Every man is responsible criminally for what of wrong flows directly from his corrupt intentions; but no man *27 intending wrong is responsible for an independent act of wrong committed by another. If one person sets in motion the physical power of another person, the former is criminally guilty for its results. If he contemplated the result, he is answerable, though it is produced in a manner he did not contemplate.” [Chapman, supra at 286, quoting 1 Bishop, Criminal Law (7th ed) (emphasis added).]
In this case, the trial court specifically found that Robinson did not intend or contemplate the result, Pannell’s fatal shooting of the victim. Because Robinson did not share Pannell’s intent to kill, he cannot be held answerable under the law for the fact that Pannell fatally shot the victim. The common enterprise was a beating. The fact that Pannell shot the victim, rather than beat him to death, is dispositive.
The framework established by Knapp and Chapman continues to be sound law. It simply does not support the majority’s conclusion that the victim’s death in this case is “clearly within the common enterprise the defendant aided because a homicide ‘might be expected to happen if the occasion should arise’ within the common enterprise of committing an aggravated assault.” Ante at 11.
The victim’s death here was not within Robinson and Pannell’s common enterprise; a homicide by gun is not a natural and probable consequence of an intended assault and battery. The majority is mistaken in concluding otherwise. It errs by determining that the unintended result of an intentional act was a “natural and probable consequence” for which a defendant may be held criminally liable.[9]
*28 As the Court of Appeals explained in the following example, a defendant must share or have knowledge of the principal’s criminal intent.
Suppose two persons are walking to the bank, and one asks the other to carry his briefcase. And, after they arrive at the bank, the owner of the briefcase opens it and holds up the bank. His friend no doubt provided aid and assistance in holding up the bank, by accompanying the thief and carrying the briefcase, but is not subject to liability as an aider and abettor unless he provided the assistance with the intention of so assisting the owner of the briefcase in holding up the bank, while either sharing or aware of his criminal intent. [Robinson, supra, slip op at 12-13.]
An aider and abettor must have the same criminal intent as the principal. The majority incorrectly faults the Court of Appeals discussion of People v Kelly[10] on this point. [11] The Court of Appeals reliance on Kelly is not misplaced. The Kelly Court wrote:
In People v Aaron, 409 Mich 672, 728; 299 NW2d 304 (1980), this Court held that
“malice is the intention to kill, the intention to do great bodily harm, or the wanton and willful disregard of the likelihood that the natural tendency of defendant’s behavior is to cause death or great bodily harm. We further hold *29 that malice is an essential element of any murder... whether the murder occurs in the course of a felony or otherwise.”
We therefore decided that the malice necessary for a felony-murder conviction could not be inferred merely from the intent to commit the underlying felony. However, we went on to state:
“The facts and circumstances involved in the perpetration of a felony may evidence an intent to kill, an intent to cause great bodily harm, or a wanton and willful disregard of the likelihood that the natural tendency of defendant’s behavior is to cause death or great bodily harm; however, the conclusion must be left to the jury to infer from all the evidence. [Emphasis added. Id., pp 728-729.]” [Kelly, supra at 272-273.]
The finder of fact here concluded that defendant did not have the requisite intent to kill the victim. Absent proof of the requisite intent, defendant’s conviction of second-degree murder must be reversed.
CONCLUSION
I agree with and completely support the Court of Appeals opinion in this matter. I would affirm the panel’s decision to reverse Robinson’s conviction of second-degree murder. I would reduce the charge of which Robinson was convicted to assault with intent to do great bodily harm less than murder and remand for resentencing on that reduced charge.

 “Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passion, they cannot alter the state of facts and evidence.” John Adams, “Argument in Defense of the Soldiers in the Boston Massacre Trials,” December 1770, quoted at The Quotations Page, <http://www.quotationspage.com/quote/3235.html> (accessed April 19, 2006).

 See People v Aaron, 409 Mich 672; 299 NW2d 304 (1980), in which this Court abrogated the common-law felony-murder doctrine. That doctrine had allowed the element of malice required for murder to be satisfied by the intent to commit the underlying felony. The Court held “that in order to convict a defendant of murder,... it must be shown that he acted with intent to kill or to inflict great bodily harm or with a wanton and willful disregard of the likelihood that the natural tendency of his behavior is to *24 cause death or great bodily harm.” The Court further held “that the issue of malice must always be submitted to the jury.” Id. at 733.

 I can find no authority for the proposition that a defendant can be held hable for all the potential or hypothetical results of an intended act. See the Court of Appeals example on page 28 of my opinion.

 26 Mich 112 (1872).

 In Knapp, the victim fell or was thrown from an upper-story window. She broke her leg and died as a result of that injury.

 In its footnote 29, the majority mistakenly cites me as stating that the word cannot, “in any context, be used to mean actions that are likely to result in a killing.” Ante at 11. In fact, I am discussing the word “in the context of this case.”

 Apart from its first two definitions as an obscene or extremely vulgar verb for sexual intercourse, the word “f***” also means “3.... To put in an extremely difficult or impossible situation.... 4.... To break or destroy.... 5.... To defraud.... 6.... To play with, to tinker. <http://en.wiktionary.Org/wiki/f***> (accessed April 19, 2006). And “2. to treat unfairly or harshly,” Random House Webster’s College Dictionary (2001), or “2. damage or ruin,” Oxford Color Dictionary (2d ed). When used synonymously with “destroy” and “damage,” the reference normally is to a physical object, not to a person.

 62 Mich 280, 286; 28 NW 896 (1886) (citation omitted).

 The majority states, “In our judgment, a natural and probable consequence of a plan to assault someone is that one of the actors may well escalate the assault into a murder.” Ante at 11. In this case, the majority believes that “[a] ‘natural and probable consequence’ of leaving *28 the enraged Pannell alone with the victim is that Pannell would ultimately murder the victim.” Ante at 12.

 423 Mich 261; 378 NW2d 365 (1985).

 Justice Levin concurred in the result reached in Kelly on the aiding and abetting issue because no objection to the instruction of the trial court was raised. However, he dissented with regard to the felony-murder issue. The judge incorrectly instructed the jury, over objection by the defense, that it might infer from the defendant’s participation in the robbery that he had the requisite intent to murder.
Retired Justice Levin sat on the Court of Appeals panel in Robinson, this case.